UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00063-TBR

SHANICE JEANINE ROSS,
Administratrix of the Estate of Gloria Ann Ross, and
SHANICE JEANINE ROSS, individually                                                     Plaintiffs,

v.

EDWARD TYRONE CARTER,
LESLIE ALLEN DUNCAN, and
THE CITY OF OAK GROVE, KENTUCKY                                          Defendants,


**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the Motion to Dismiss filed by the City of Oak Grove, Kentucky, (Docket No. 17; Amended Memorandum at Docket No. 24). Plaintiff Shanice Jeanine Ross has responded, (Docket No. 25), and the City has replied, (Docket No. 26). Fully briefed, this matter stands ripe for adjudication. Fully briefed, the matter stands ripe for adjudication. For the reasons below, the Court will DENY the City's Motion to Dismiss.


**Factual Background**

Unless otherwise noted, Plaintiff alleges the following facts in support of her claims. Throughout 1993 and 1994, Defendants Edward Carter, Leslie Duncan, and other police officers for the City of Oak Grove, Kentucky, frequented the New Life Massage Parlor, a local business that doubled as a brothel. The officers extorted cash, equipment, and other compensation from New Life employees, threatening criminal prosecution if they did not acquiesce. Such employees included eighteen year-old Gloria Ann Ross and twenty-two year-old Candida Darlene Belt. Gloria Ross's daughter, Plaintiff in this action, was born in Summer 1994. (*See* Docket No. 24-1 at 5.) On September 20, 1994, Gloria Ross and Candida

1

Belt were shot and stabbed to death in the massage parlor's back room.  Plaintiff now alleges that Defendants Edward Carter and Leslie Duncan, both Oak Grove City Police officers, murdered her mother.

Acknowledging that nearly two decades elapsed between the alleged murders and the filing of her Complaint, Plaintiff submits that Defendant Duncan manipulated and destroyed evidence at the scene in order to conceal the identities of those responsible for the murder.  On September 23, 2013, Duncan pleaded guilty to Tampering with Physical Evidence, Concealing Physical Evidence and/or Destroying Physical Evidence.  Plaintiff alleges that Duncan's actions hindered the investigations of the Kentucky State Police and the Christian County Sheriff's Office.  Plaintiff further contends that without sufficient proof to discern who caused her mother's death, she was unable to file a lawsuit either individually or on behalf of the estate.

This uncertainty persisted until November 15, 2013, when Duncan was indicted for Complicity to Commit Murder and Carter was indicted for First Degree Murder.[1]  Plaintiff then filed this action on April 29, 2014, alleging that Defendants deprived Gloria Ross of her constitutional rights to due process of law and raising claims of battery and wrongful death, loss of consortium, and intentional infliction of emotional distress.

## Legal Standard

Federal Rule of Civil Procedure 12(b) provides for the dismissal of claims and parties for seven reasons, including dismissal for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12 continues:

> (d) Resulting of Presenting Matters Outside the Pleadings.  If, on a motion under Rule 12(b) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as

---

[1] Although Frank Black, Jr., was also indicted for two counts of First Degree Murder, Plaintiffs have not named him as a defendant in the instant lawsuit.

> one for summary judgment under Rule 56. All the parties shall be given
> reasonable opportunity to present all material made pertinent to the
> motion.

Accordingly, Rule 12(d) permits a 12(b)(6) motion to be converted into a motion for summary judgment. Because Defendants have submitted and the Court has considered several newspaper articles extrinsic to the face of the Complaint, the Court will apply summary judgment standards. *See Mays v. Buckeye Rural Elec. Co-Op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may consider motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings).

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The movant must offer more than a mere scintilla of evidence in support of his position; rather, he must present sufficient evidence to allow the trier of fact to reasonably find in his favor. *See id.* (citing *Anderson*, 477 U.S. at 252). Summary judgment is inappropriate only if the parties genuinely dispute an issue of material fact; mere speculation will not defeat such a motion. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

Defendants primarily argue that the Court must dismiss Plaintiff's claims as time-barred.  They point to KRS 413.180, which establishes certain time limitations during which a personal representative of the deceased may bring an action.  The statute provides in full:

> (1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after the expiration of that time, if commenced within one (1) year after the qualification of the representative.
>
> (2) If a person dies before the time at which the right to bring any action mentioned in KRS 413.090 to 413.160 would have accrued to him if he had continued alive, and there is an interval of more than one (1) year between his death and the qualification of his personal representative, that representative, for purposes of this chapter shall be deemed to have qualified on the last day of the one-year period.

KRS 413.140, which establishes a one-year limitations period for personal injury actions, is among the statutes to which KRS 413.180 purports to apply.  Accordingly, Plaintiff's actions for battery, loss of consortium, and intentional infliction of emotional distress are subject to this one-year limitations period.  *See* KRS 413.140(1)(a) (requiring "[a]n action for injury to the person of the plaintiff" to be commenced one within one year after the cause of action accrued).  Furthermore, because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions.  *Wilson v. Garcia*, 471 U.S. 261, 275-80 (1985).  Thus, in Kentucky, § 1983 actions are limited the same one-year statute of limitations found in KRS 413.140(1)(a).  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).  Defendants argue that these limitations periods render Plaintiffs' claims for battery, loss of consortium, intentional infliction of emotional distress, and violation of § 1983 untimely.

KRS 411.130, which establishes a cause of action for wrongful death, is not among the statutes referenced by KRS 413.180.  Nonetheless, Kentucky courts have recognized that this provision

establishes a one-year statute of limitations for wrongful death claims. *See Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 653-54 (Ky. 1992) (citing *Carden v. Louisville & N.R. Co.*, 39 S.W. 1027 (1897)). Kentucky law is clear: "'If a personal representative is appointed within one year of the date of death, he then is granted one year from the date of his appointment to file suit. If no suit is filed within that time, the action for wrongful death dies.'" *Conner*, 834 S.W.2d at 654 (quoting *Southeastern Ky. Baptist Hosp. v. Gaylor*, 756 S.W.2d 467, 470 (Ky. 1988)); *see also Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641-42 (6th Cir. 1986). Generally, then, a decedent's personal representative must prosecute a wrongful death action must raise the claim within two years from the date of the decedent's death. *See Gaylor*, 756 S.W.2d at 470 (Ky. 1988); *Gaither v. Commonwealth*, 161 S.W.3d 345, 347-48 (Ky. Ct. App. 2004).

The limitation period of KRS 413.140(1) began to run on September 20, 1994, the date of Gloria Ross's death. *See Farmers Bank & Trust Co. v. Rice*, 674 S.W.2d 510, 512 (Ky. 1984). The Christian District Court appointed Ryan Ross, Gloria's husband, administrator of her estate on September 15, 1997. The same court approved the estate's final settlement on February 19, 2007.[2] (*See* Docket No. 17-2.) As noted above, Kentucky law provides that if the personal representative is appointed more than a year after the decedent's  date of death, the one year-anniversary of the death is considered the date of appointment—here, September 20, 1995. The personal representative then has one year from the anniversary of the death to commence a cause of action. Ryan Ross did not commence an action within this two-year period, but instead raised the instant action on April 4, 2014—nearly eighteen years beyond its expiration. Accordingly, Defendants urge the Court to dismiss the claims.

But these statutes of limitations are not necessarily determinative. The Court notes that Kentucky's saving statute tolls the running of the statute of limitations for Plaintiff's loss of consortium

---

[2]The Christian District Court approved the estate's final settlement on February 19, 2007. On February 10, 2014, the Christian District Court granted Shanice Ross's motion to reopen the estate and appointed her administratrix. (*See* Docket No. 17-2.)

claim, raised in her individual capacity, due to her infancy.   KRS 413.170(1) extends the limitations period if the individual entitled to raise the claim was an infant when the cause of action arose.   The statute of limitations is tolled until a party reaches eighteen years of age.   KRS 413.170(1) (allowing one who was an infant at the time a cause of action accrued to bring the action "within the same number of years after the removal of the disability . . . allowed to a person without the disability to bring the action after the right accrued."); KRS 2.015 (establishing age of majority).   *See Hammers v. Plunk*, 374 S.W.3d 324, 331 (Ky. Ct. App. 2011) (limitations period for children's loss of parental consortium claim was tolled due to their infancy per KRS 413.170).   However, given Plaintiff's age, this statute alone does not save her claim.   Plaintiff turned eighteen years old in 2012, leaving her until 2012 to file her Complaint. Without more, Plaintiff's claim of April 29, 2014, remains untimely.

Plaintiffs assert that this delay does not prove fatal, arguing that the limitations periods as to each of her claims—both those raised in her individual capacity and those brought on behalf of her mother's estate—were tolled by Duncan's concealment of the murder, manifested by his guilty plea to tampering with evidence.   Plaintiff insists that despite diligent efforts to investigate the murders, her attempts yielded only speculation, leaving her with no factual basis upon which to assert such claims.   Only when Defendants were indicted on November 15, 2013, was Plaintiff able to ascertain the appropriate objects of her lawsuit.   (Docket No. 29-1 at 2-4.)

Plaintiff correctly states that when a defendant causes one to fail to timely file suit by fraudulently concealing information, he cannot then rely upon the statute of limitations defense.   *See* KRS 413.190(2). "[W]hen a wrongdoer intentionally conceals his unlawful act the statute of limitations begins or run when the person injured learns of the unlawful act rather than from the time of commission of the act." *Resthaven Memorial Cemetery v. Volk*, 150 S.W.2d 908, 912 (1941).   Such concealment includes efforts to prevent the plaintiff from inquiring into the action, eluding such investigation, or otherwise misleading her.   *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 439 (W.D. Ky. 1994).   In the Sixth Circuit, a three-part test governs whether the statute of limitations should be tolled due to a defendant's alleged

wrongdoing:  (1) the defendant must have wrongfully concealed his actions; (2) the plaintiff must have failed to discover the operative facts that form the basis of her lawsuit within the limitations period; and (3) the plaintiff must have exercised due diligence prior to discovering the operative facts.  *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1001-02 (6th Cir. 1994); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).  Furthermore, the defendant's conduct must have been the reason that the plaintiff failed to proceed with legal action.  *Blanton*, 99 F. Supp. 2d at 804 (quoting *Reuff-Griffin Decorating Co. v. Wilkes*, 191 S.W. 443, 446 (Ky. 1917)).

Defendants respond that the date of discovery rule precludes the application of equitable tolling.  Under Kentucky law, an action does not accrue until a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact that she is injured, but also that the defendant's conduct may have caused her injury.  *Hazel*, 863 F. Supp. at 440 (citing *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 819 (Ky. App. 1991); *Louisville Trust Co. v. Johns-Manville Prods.*, 580 S.W.2d 497, 501 (Ky. 1979) (citation omitted)).  The same principle applies under federal law, which dictates when the statute of limitations begins to run on a § 1983 claim:  the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint.  *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *see also Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  As Defendants note, plaintiffs must exercise reasonable care and diligence in pursuing a cause of action.  An individual plaintiff's obliviousness to her cause of action will not toll the limitations period; rather, the analysis hinges upon whether a reasonable person using ordinary diligence would have discovered the cause of action.  *Greywolf v. Roman Catholic Diocese of Covington*, 2011 WL 3361342, at *3 (Ky. Ct. App. 2011).

Arguing that no genuine issue of material fact exists as to this matter, Defendants cite *Greywolf* and *Moyers v. Roman Catholic Bishop of Louisville*, No. 2004-CA-001886-MR, 2005 WL 3116116, at *5 (Ky. App. Nov. 23, 2005), two cases concerning  the statute of limitations in lawsuits raised by victims of childhood sexual abuse.  *Greywolf* concluded that the plaintiff failed to prove that he acted with

reasonable care and diligence to discovery his potential claim during the twenty-seven years after the alleged abuse occurred.  The Kentucky Court of Appeals noted the substantial news coverage of the scandal, including "extensive publicity" in the local area concerning abuse at the church where the plaintiff was abused.  *Id.* at *1.  The court concluded that given this information, the plaintiff had adequate notice and should reasonably have known of his potential claim.  The same result inured in *Moyers*:  because the victim had access to widespread publicity concerning the Catholic Church's cover-up of its knowledge of abuse—specifically including that of her alleged assailant—she should reasonably have discovered the facts of the Church's concealment.  2005 WL 3116116 at *5-6.

Here, Defendants insist that similarly pervasive media coverage provided Plaintiff, or would have provided a reasonable person, with notice that she may have had a claim against Defendants.  They contend that upon Duncan's July 12, 2012, arrest for tampering with physical evidence, Plaintiff should have realized her cause of action.  (Docket No. 28-1.)  Emphasizing the ongoing local coverage of Duncan's arrest and plea, they provide headlines of thirteen newspaper articles published in Oak Grove's local newspaper between July 2012 and March 2013.  But to the extent that the articles are relevant and their contents discernable,[3] they are devoid of information suggesting that Duncan and Carter caused Gloria Ross's death.  Instead, they concern only Duncan's arrest and subsequent plea to tampering with physical evidence; none appears to mention Carter at all.  (*See* Docket Nos. 17-4 through 17-16.)  Although the articles emphasize the mishandled investigation, they in no way connect either Defendant to the murder itself.  To the contrary, a story published shortly after Duncan's arrest notes that the field of suspects remained open:  "'Everybody is a suspect,' [a Christian County Sheriff's Office detective] said.  'Nobody will be cleared until the case is solved.'"  (Docket No. 17-7 at 3.)  The news stories determinative in *Greywolf* and *Moyers* reported the crimes that were the basis of those plaintiffs' claims.  Here, however, the articles are silent as to who caused Gloria Ross's death.

---

[3] At least one of the articles that Defendants have provided appears to have no connection to the matter at hand:  the document entitled Exhibit J discusses a guilty plea in an unrelated case.  (*See* Docket No. 17-11.)  Moreover, the Court is unable to determine the complete substance of the majority of Defendants' exhibits, as they provide only headlines and the first three to four lines of the articles.  The remainders of these articles are protected by a paywall.

Defendants further provide certain excerpts of Plaintiff's deposition testimony in furtherance of their argument. Shanice Ross testified that she grew up with the knowledge that her mother died when Shanice was very young. (Docket No. 17-17 at 5.) Around the time that Shanice began middle school, she learned that her mother was murdered while at work in Oak Grove and discovered online sources describing her mother's death as an unsolved mystery. (Docket No. 17-17 at 6-7.) In July 2012, two weeks before her eighteenth birthday, she learned that Duncan was had been arrested for tampering with evidence. (Docket No. 17-17 at 8-9.) She continued to monitor Duncan's case and was present for his guilty plea in an effort to "represent[] her mother, because she was gone and there was no way for her to have a voice." (Docket No. 17-17, at 12.) However, this proceeding did not suggest that Duncan murdered Gloria Ross:

> Q:   When he pled guilty to tampering with physical evidence, did he admit that he killed your mother?
>
> A:   No.
>
> Q:   When he pled guilty to tampering with physical evidence or at any time before that, did you have any reason to believe that he was probably the one that killed your mother?
>
> A:   I didn't have reason to believe that he killed my mother, but I didn't have reason to believe that he didn't.

(Docket No. 17-17 at 12.)

Nothing in Shanice Ross's testimony suggests that she had reason to believe that Defendants caused her mother's death until their indictment. While Defendants argue that Shanice "did nothing to investigate the matter herself," (Docket No. 26 at 6), they fail to acknowledge that she monitored online coverage of her mother's death, including the proceedings against Duncan. Defendants do not suggest what more Shanice Ross could have done, nor do they point to precedent requiring her to do more. At this stage, the Court cannot say that Shanice Ross did not diligently pursue her claim.

The Court concludes that whether Plaintiff had the requisite knowledge under the discovery rule is a question of fact better reserved for trial, or upon motion if there is further discovery. On a motion for summary judgment, the Court must construe all facts in a light most favorable to the non-movant. At this early stage, it appears that equitable tolling could save Plaintiff's claims. *See, e.g.*, *St. Clair v. Bardstown Transfer Line*, 221 S.W.2d 679 (Ky. 1949) (tolling the statute of limitations in a wrongful death case arising from a hit-and-run accident wherein the defendant failed to report the accident and concealed the identity of the vehicle's owner and operator). The Court anticipates that the details of Duncan's alleged concealment and of Plaintiff's knowledge will be clarified as additional evidence is developed. In the meantime, these outstanding questions of fact provide reasonable grounds to dispute the point in time that Plaintiff should have discovered her claims.

## **ORDER**

Having considered the parties' arguments and exhibits and being otherwise sufficiently advised, the Court hereby DENIES Defendants' Motion to Dismiss, (Docket No. 17).